B. H. JACKSON, Executor, Appellant, v. CLARA G. NORTHRUP et al., Appellees.

**TRUSTS:** Constructive—Evidence—Insufficiency. Evidence re-
1  viewed and held insufficient to establish a resulting trust.

**GIFTS:** Mental Competency—Evidence—Sufficiency. Evidence re-
2  viewed and held sufficient to establish mental competency to make a gift, and the actual making of a gift, by an old man in urgent need of care, in favor of a relative furnishing such care.

**PLEADINGS:** Conversion—Evidence of Gift as Defense—Special
3  Pleading. A litigant need not allege the negative of a proposition in order to introduce evidence bearing thereon, when the affirmative of the proposition has been alleged and must be established by the adverse litigant.

PRINCIPLE APPLIED: Plaintiff, as executor, in substance alleged that the defendant had fraudulently converted to his own use certain funds belonging to the deceased in his lifetime. Answer, general denial. *Held,* evidence that the funds had been delivered to defendant by deceased as a gift was admissible without specially pleading the "gift."

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

TUESDAY, JUNE 22, 1915.

PLAINTIFF is the executor of the estate of Charles E. King, deceased. He has brought this action against the defendants for alleged conversion of funds belonging to the King estate. His petition alleges that such converted funds were invested by the defendants in the purchase of certain real property and he prays that a constructive trust be im-

pressed upon such property in favor of the plaintiff as executor and that the defendants be adjudged to hold the legal title thereto in trust for such executor. The answer of the defendants is a general denial. There was a decree dismissing the petition and the plaintiff appeals.—*Affirmed.*

*Strock & Wallace,* for appellant.

*Bowen & Alberson,* for appellees.

EVANS, J.—I. Charles E. King had been a long time resident of Des Moines. His death occurred on October 26, 1912. He was seventy-five years of age. Up to a year or more prior to his death, he had been the possessor of property in the form of moneys and credits to the extent of $10,000 or somewhat more.

1. TRUSTS: constructive: evidence: insufficiency.

He had no children. His wife had died in 1908. After the death of his wife, he occupied his home alone until January, 1910. In November, 1909, he executed his will, whereby he made provision for all of the children of his four deceased sisters. By such provision, he directed the division of his estate into four parts and that each fourth part should go respectively to the representatives of each deceased sister *per stirpes.* The defendant, Mrs. Northrup, is a daughter of one of such deceased sisters, Mrs. Seth Graham. The other defendant is her husband. In January, 1910, King became sick and needed care. He vacated his home and moved to the home of his brother-in-law, Seth Graham. Mr. Graham was himself more or less an invalid, and his daughter, Mrs. Northrup, with her husband, lived with him and did his housekeeping. Into this home, King came for a brief time before going to the hospital. Shortly thereafter, he went to the hospital to receive surgical treatment and remained there about two weeks, after which time he returned to the Graham home. In this home, he continued to reside until he and Mr. and Mrs. Northrup moved to another home acquired by the North-

rups with his assistance. In this new home, these three lived together until the death of Mr. King.

The foregoing is perhaps a sufficient indication of the background against which the material evidence in the case must be viewed.

Among the assets of King were two bank certificates of deposit of $4,000 each, which he had held by successive renewals for several years. The new home of the Northrups was purchased about June, 1911. The property consisted. of a residence and its appurtenances and thirty acres of ground in the near vicinity of Des Moines. The purchase price was $8,500. At this time, one of the bank certificates for $4,000 was indorsed by King to Mr. Northrup and by him applied upon the purchase price of the new home; $500 of the purchase price was contributed as a gift to Mrs. Northrup by her father, Seth Graham. A mortgage for $4,000 was executed upon the home for the purpose of obtaining the remainder of the purchase price.

In October, 1911, the other bank certificate for $4,000 was also indorsed to the defendant Northrup and at the same time cashed at the bank. It is because of these transactions that the plaintiff asks that a constructive trust be impressed upon the land in his favor.

It is the contention of the plaintiff that King, at the time of these transactions, was mentally incompetent to transact business and especially incompetent to make a gift. The contention for the defendants is that King was not mentally incompetent and that he did in fact transfer such certificate to them as a gift. The trial court found with the defendants.

There is a point of view from which this alleged gift comprising the substantial part of the donor's estate might seem quite unreasonable and therefore incredible. But as already stated, the evidence must be read against its background.

On the question of mental incompetency, the very clear preponderance of the evidence is with the defendants. The

substance of the evidence tending to show mental incompe-

tency is failure of recognition of the witness

2. GIFTS:
mental com-
petency: evi-
dence:
sufficiency.

by Mr. King and a failure to engage in con-
versation or to notice the presence of ac-
quaintances on certain occasions and an al-
leged "dazed" appearance. This testimony was given almost
wholly by parties in interest. It is undisputed that for many
years Mr. King had been very deaf. This condition is suffi-
ciently described by Mr. Powell, his former attorney, who
was a witness for the plaintiff.

"Mr. King was very deaf, he could not hear an ordinary
conversation, and in order to make him hear, I always used
to go around my desk where he was sitting, and put my lips
very close to his ear."

Mrs. Gregory, one of the beneficiaries of the will, de-
scribed his condition as far back as 1908, as follows:

"When he came to our house he would stay two or three
hours. Uncle was very quiet, but was always of a cheerful
disposition. He had always been hard of hearing. Some-
times I could not make him understand what I had to say,
but he would always start some conversation and talk a good
while on his subjects intelligently."

It is undisputed also that for some years Mr. King had
been subject to occasional involuntary evacuations of the
bowels and bladder. The frequency of these untoward occa-
sions increased as he grew older. In the light of these undis-
puted facts, the descriptive evidence of plaintiff's witnesses
is not very persuasive. On the other hand, a very consid-
erable array of apparently disinterested and intelligent wit-
nesses have presented the appearance and conduct of Mr.
King up to a comparatively short time before his death. Much
of this testimony is specific in time and circumstance. No
other conclusion is fairly possible from the testimony as a

whole than that the mental competency of the deceased has not been successfully assailed. Whether the transfer of the certificates was intended as a gift or not is a more difficult question. The claim of gift is supported by the direct evidence of Mrs. Northrup alone. As a witness, she related in detail the conversation between King and her husband (who was also deaf). Because of her interest, her testimony should be subjected to great scrutiny. From the very nature of the case, no direct testimony can be produced to contradict the same. Surely it ought not to be accepted lightly, and perhaps it ought not to be accepted in itself as sufficient unless it has satisfactory corroboration in the various circumstances of the case. After a very careful consideration of the entire record, we all reach the conclusion that all the circumstances of the case, most of them undisputed, strongly corroborate the claim of gift.

From King's point of view in 1911, he needed a home with someone who could give him patient and kindly care. He had an expectancy of life of a few years and it is an exceptional man who does not expect to outlive the expectancy of the mortality tables. The care which he needed was unpurchasable. The cleansing of garments and bedclothes was one continuing task. There were many nephews and nieces who had been remembered in the will. They were all affectionate and kindly to their uncle, but only one came under the load. She had been selected by King himself in January, 1910, as the one upon whom he would venture to lean. For a year and a half before the purchase of the new home, she had borne his infirmity without complaint and without price. She and her husband were themselves poor and in a sense homeless. It clearly appears that King was interested in their acquisition of a new home. He was close and careful with his small business affairs. He was not lacking in intelligence. We must assume that there was some intelligent reason for his transfer of the bank certificates at the time shown. He had selected their home as his. He had

been with them long enough to know whether he could trust
their patience with his infirmity, and their fidelity to his
needs. Unless he was determined at all hazards to keep his
little estate intact for final distribution among his nieces and
nephews, the use of these bank certificates in the acquisition
of this home would be quite in accord with his own interests.
It would naturally tend to his own comfort and enjoyment,
assuming, of course, that he expected to occupy the home
with the Northrups to the end of his days.

If he were separated entirely from affectionate relatives
and were required to purchase his care from hospital and
nurse, his little estate must have suffered great depletion.
In addition to the circumstances here referred to, there was
the direct evidence of one disinterested witness, who had been
a long-time acquaintance of Mr. King, to the effect that he
had told the witness that he had disposed of his property in
the manner herein claimed.

In view of our concurrence with the view of the trial
court on the question of fact here involved, we deem it need-
less to go into a more detailed discussion of the evidence.
We do not overlook one or two circumstances relating to the
alleged codicil and to a claim filed by Mr. Northrup. It is
strongly urged that these circumstances discredit the claim
of gift. The circumstances, such as they are, are entitled
to consideration, but they are not so damaging to the defend-
ants as the plaintiff contends. The first is lacking in proof.
The second might properly have called for an explanation
from Mr. Northrup. The explanation, however, would neces-
sarily call for a personal transaction between him and the de-
ceased, to which he would be incompetent to testify. Whether
he ought to have offered to testify on the subject, or whether
the plaintiff should have offered to waive objections to his
testimony, we will not now consider. The circumstance was
not of such a nature as to be controlling in any event.

II. It is strongly urged in argument by the appellant
that the pleadings of the defendants opened no door to proof

of a gift.   It is urged, therefore, that the evidence on that

**3. PLEADINGS :** question should be wholly disregarded.   The
**conversion ;** point is evidently raised for the first time in
**evidence of** this court.   It was not made in the lower
**gift as de-**
**fense : special** court either by attack upon the pleadings or
**pleading.**

by objections to the evidence.   It must be said that the plead-
ings on both sides were loosely drawn.   The petition charged
the defendants with converting the moneys of the *estate* of
Charles King.   There was no allegation or suggestion therein
of the relation existing between the defendants and King in
his lifetime.   Under the evidence, King might have been found
mentally competent and it might have been found that he
voluntarily transferred the property to the Northrups, and
the question might still remain whether the transfer was made
by way of a gift or by way of a loan.   But the petition was not
framed to claim a recovery upon any other ground than that
of fraudulent conversion.   Evidence of a gift from King in
his lifetime certainly tended to negative the claim of fraudu-
lent conversion of the same funds.   In view, therefore, of
the form of the petition, the plaintiff is in no position to
contend that the defendants should have pleaded the gift as
an affirmative defense.   The parties introduced their testi-
mony in the court below upon that issue and the case was
made to turn upon it.   We have therefore undertaken to dis-
pose of it here upon the same theory of the pleadings as was
adopted below both by the trial court and by the parties.   The
order of the trial court must be—*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.